UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Shawn McGrath
          v.                          Civil No. 10-cv-455-JL
                                      Opinion No. 2012 DNH 060
Michael J. Astrue, Commissioner,
Social Security Administration


**MEMORANDUM ORDER**

This is an appeal from the denial of an application for
Social Security Disability Benefits.  See 42 U.S.C. § 405(g).
Shawn McGrath, contends that the administrative law judge ("ALJ")
incorrectly found that although McGrath was severely impaired by
chronic pain resulting from an accident in 1995 and an affective
disorder, Admin. R. 18;[1] see 20 C.F.R. §§ 404.1520 (a),(c), he
retained the residual functional capacity[2] ("RFC") to perform
light work.[3]  Admin. R. 20; see 20 C.F.R. § 404.1567(b).  McGrath
also alleges that the ALJ erroneously concluded that he remained

---

[1]The court will reference the administrative record ("Admin.
R.") to the extent that it recites facts contained in or directly
quotes documents from the record.  Cf. Lalime v. Astrue, No. 08-
cv-196-PB, 2009 WL 995575, at *1 (D.N.H. Apr. 14, 2009).

[2]"Residual Functional Capacity" is defined as "an assessment
of an individual's ability to do sustained work-related physical
and mental activities in a work setting on a regular and
continuing basis.  A 'regular and continuing basis' means 8 hours
a day, for 5 days a week, or an equivalent work schedule."  SSR
96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[3]As discussed in detail infra, the ALJ did not conclude that
McGrath could perform a full range of light work, but made
specific findings regarding both his physical and mental
capabilities.  Admin. R. 20.

capable of performing past employment, see 20 C.F.R. §
404.1520(a)(4)(iv), or, in the alternative, that there remained a
significant number of jobs available to him in the national
economy.  Admin. R. 24-26; see 20 C.F.R. § 404.1520(a)(4)(v).
Specifically, McGrath contends that the ALJ committed reversible
error because she:

>    (1) did not grant controlling weight to the opinions of
>    his treating licensed clinical social worker and
>    registered nurse when formulating McGrath's RFC, Cl.
>    Br. 18-24, see generally 20 C.F.R. §§ 404.1502,
>    404.1527(d); SSR 96-2p, 1996 WL 374188 (July 2, 1996),
>    and
>
>    (2) formulated an RFC that was inconsistent with
>    portions of opinions of medical providers that were
>    given "great weight" by the ALJ, see generally, 20
>    C.F.R. §§ 404.1527, 404.1545; Cl. Br. 17-18, and,
>
>    (3) did not grant proper weight to a ruling by the
>    Veteran's Administration (VA) that he was disabled, see
>    generally, 20 C.F.R. §§ 404.1504, 404.1512(b); SSR 06-
>    3p, 2006 WL 2329939 (Aug. 9, 2006);  Cl. Br. 5-6; and
>
>    (4) concluded, at Steps 4 and 5[4] that he could perform
>    jobs McGrath claims exceed his RFC.  See generally, 20
>    C.F.R. §§ 404.1545, 404.1560; Cl. Br. 12-17.

---

[4]The social security regulations set forth a five step
procedure to determine if a claimant is disabled.  20 C.F.R. §
404.1520(a)(4).  The claimant bears the burden in the first four
steps to show that:  (1) he is not engaged in substantial gainful
activity; (2) he has a severe impairment; (3) the impairment
meets or equals a specific impairment listed in the Social
Security regulations; or (4) the impairment prevents or prevented
him from performing past relevant work.  At Step 5 of the
analysis, it is the Commissioner's burden to establish that jobs
exist in the national economy given the claimant's impairments,
age, education, and work experience.  See id.

The Commissioner asserts that the ALJ's findings are supported by substantial evidence in the record, and moves for an order affirming his decision.  This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 405(g) (Social Security).  After a review of the administrative record and the pleadings,[5] the court denies McGrath's motion and grants the Commissioner's motion.

## I.   APPLICABLE LEGAL STANDARD

The court's review under Section 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); see Simmons v. Astrue, 736 F. Supp. 2d 391, 399 (D.N.H. 2010).  If the ALJ's factual findings are supported by substantial evidence in the record, they are conclusive, even if the Court does not agree with the ALJ's decision and other evidence supports a contrary conclusion.

_____

[5]McGrath's motion alluded to other possible issues that were not fully developed by counsel and whose discussion bordered on incoherent.  Although the court tried its best to understand and address all of McGrath's objections, in many instances it was unable to discern a cognizable argument.  Courts can only address issues properly before them and need not endeavor to resolve issues presented in a undeveloped manner.  See Wall v. Astrue, 561 F.3d 1048, 1065 (10th Cir. 2009) (courts need not address issues that are not supported with "developed argumentation"); cf. Graham v. United States, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." (quotations omitted)).

See Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  The ALJ is responsible for determining issues of credibility, resolving conflicting evidence, and drawing inferences from the evidence in the record.  See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Pires v. Astrue, 553 F. Supp. 2d 15, 21 (D. Mass. 2008) ("resolution of conflicts in the evidence or questions of credibility is outside the court's purview, and thus where the record supports more than one outcome, the ALJ's view prevails").  The ALJ's findings are not conclusive, however, if they were "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35. If the ALJ made a legal or factual error, the decision may be reversed and remanded to consider new, material evidence, or to apply the correct legal standard.  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16, 19 (1st Cir. 1996); see 42 U.S.C. § 405(g).

## II.  BACKGROUND

Pursuant to this court's local rules, the parties filed a Joint Statement of Material Facts (document no. 20), which is

part of the record reviewed by the court.  See LR 9.1(d).  This
court will briefly recount the key facts and otherwise
incorporates the parties' joint statement by reference.

    McGrath filed a request for Disability Insurance Benefits
and Supplemental Security Income in July 2007, alleging an onset
of disability in December 2006 due to, inter alia, depression,
post traumatic stress syndrome, a right arm and leg injury, the
lasting effects of a concussion, and an injured pelvis.  See
Admin. R. 133, 157.  He was 35 years old at the date of filing
and is a Navy veteran.  Id. at 133.  McGrath's injuries resulted
from a severe motorcycle accident in 1995 during which a
passenger, his sister's fiance, was killed.  McGrath spent the
next two years recovering from the accident and endured multiple
corrective surgeries.  Id. at 51, 266.  McGrath was granted a
medical discharge from the service in 1997, id. at 210, and
worked in a variety of civilian jobs until December 2006.  Id. at
189-195.

    In his function report, McGrath stated that he was unable to
"do anything that is repetitive or requires extended range of
motion," or required "prolonged standing."  Id. at 185.  He also
had "trouble climbing stairs/ladders" because his "right leg may
give out at any time."  Id.  McGrath stated, however, that he
possessed a "normal" ability to follow instructions and although
he had trouble dealing with stress, he got along "fine" with

authority figures and could handle changes in routine.  Id. at
185-86.  He agreed that he was able to "finish what [he]
start[s]."  In response to a question asking about his ability to
pay attention, McGrath responded, "n/a."[6]  Id. at 185.  He stated
that his daily activities include cooking, household chores,
household repairs, shopping, caring for his children, driving to
appointments and errands, and "work[ing] on hobbies."  Id. at
180-84.  Notably, his hobbies include bicycle repair and
refurbishment involving lifting 20-25 pound bicycles and
manipulation of their mechanics.  Id. at 59, 180-84, 362.

        At the hearing, McGrath testified that he was limited by
physical pain in his right arm, right leg, back and left
shoulder.  Id. at 47-48.  He stated that if he tried to increase
physical activity, his pain "starts to inflame, and it causes
more, more irritation."  Id. at 47.  He also testified that after
he was discharged from the service, he tried a series of
essentially manual-labor or factory jobs that didn't last long
because they were "too overbearing for my body" or involved "fast
repetition" and he "couldn't keep up with the work."  Id. at 53-
54.  McGrath eventually held a long term job delivering auto
parts, but he testified that this job caused him significant

---

        [6]"N.A." is a common abbreviation for "not applicable."  See
Elsevier's Dictionary of Acronyms, Initialisms, Abbreviations and
Symbols, 384 (Fioretta Benedetto Mattia ed., Elsevier BV, 1997).

pain.  <u>Id.</u> at 54-55.  He has not worked since December 2006.  <u>Id.</u> at 55.

McGrath also testified to struggling with post traumatic stress disorder and depression as a result of the accident.[7]  <u>Id.</u> at 55-58.  McGrath stated that he experiences a lot of anger and guilt.  He testified, contrary to his statements in the function report, that he has trouble sleeping and has significant memory, focus, and concentration problems.  <u>Id.</u> at 56.  Finally, he testified that his pain makes him "very irritable" and that this causes him to have low tolerance for stress and an inability to "deal[] with people."  <u>Id.</u> at 58.  McGrath stated that "a lot of times I need to go lay, I lay down.  I need to just go ahead and collect my thoughts.  I need to just rest.  Because . . . [he is] irritated by the, from the pain and discomfort."  <u>Id.</u>

The ALJ concluded that McGrath was severely impaired by "chronic pain status post [orthopaedic] injuries from a 1995 motor vehicle accident and an affective disorder."[8]  <u>Id.</u> at 18;

---

[7]McGrath also discussed that when he started to experience memory problems, he had neurological testing done to uncover whether it was related to a head injury sustained in his accident.  McGrath noted, however, that this testing did not reveal any obvious causal link to his head injury.  <u>Id.</u> at 57.

[8]An affective disorder is a "mental disorder[] whose essential feature is a disturbance of mood manifested as one or more episodes of mania, hypomania, depression, or some combination."  <u>Dorland's Illustrated Medical Dictionary</u>, 555, 558 (31st ed. 2007).

see 20 C.F.R. § 1520(a)(4)(ii).  She ruled that McGrath has the residual functional capacity to perform light work subject to certain physical and mental restrictions.[9]  See 20 C.F.R. §§ 1520(a)(4)(ii), 404.1567(b), Admin. R. 20.

The ALJ consulted with a vocational expert, see Admin. R. 24, 25, 65-74, and concluded that McGrath was capable of performing his past work as a "repacker" or a "bottle packer." Id. at 24; see 20 C.F.R. § 404.1520(a)(4)(iv).  In the alternative, the ALJ found that there are a significant number of jobs available to McGrath in the national economy in light cleaning and "printer circuit board," or as a fast food worker, telemarketer, document preparer, eye glass frame polisher, and "bit packer."  Admin. R. 25; see 20 C.F.R. § 404.1520(a)(4)(v). She therefore concluded that McGrath is not disabled.  Admin. R. 26; see 20 C.F.R. § 404.1520(a)(4).  This appeal followed.[10]

_____

[9]The ALJ concluded that McGrath could only "stand and/or walk up to six hours and sit for up to six hours in an eight hour workday with normal breaks."  Admin. R. 20.  McGrath was also limited to "unskilled, routine, repetitive work."  Id.

[10]The Decision Review Board, see generally 20 C.F.R. § 405.401, affirmed the ALJ's decision, Admin. R. 3-5, rendering the ALJ's order a final decision of the Commissioner appealable to this court.  See 20 C.F.R. § 405.420.

III. **ANALYSIS**

A five-step process is used to evaluate an application for social security benefits. 20 C.F.R. § 404.1520(a)(4).  The applicant bears the burden through the first four steps to show that he is disabled.[11] Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner bears the burden of showing that a claimant has the residual functional capacity to perform other work that may exist in the national economy. Id.; see also 20 C.F.R. § 404.1520(a)(4)(v); Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  The ALJ's conclusions at steps four and five are informed by her assessment of a claimant's RFC, which is a description of the kind of work that the claimant is able to perform despite his impairments. 20 C.F.R. §§ 404.1520(a)(4), 404.1545.

A. **Medical opinions**

McGrath raises multiple issues regarding the ALJ's treatment of opinions offered by various medical sources.  He contends that the ALJ erred in refusing to grant controlling weight to a treating social worker and registered nurse.  He also contends

_____

[11]The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A).

that the ALJ erred in crediting only portions of medical opinions she had afforded great weight.

The decision that a claimant is disabled is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(1); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).  As such, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work'" does not compel a finding that the claimant is disabled. 20 C.F.R. § 404.1527(e)(1).  Still, an ALJ is prohibited from disregarding relevant medical source opinions. See SSR 96-5p, 1996 WL 374183, at *5.  An ALJ, as a lay person, cannot interpret a claimant's medical records to determine his RFC. Manso-Pizarro, 76 F.3d at 17.  An ALJ must rely to some degree on RFC evaluations from a physician or another expert. Id. at 17-18. This does not mean, however, "that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).  That premise "is unsupported by the statutory scheme, . . . case law, or by common sense, for that matter." Id.  Rather, "an ALJ is entitled to piece together the relevant medical facts from the findings and opinions of multiple physicians." Mulkerron v. Astrue, No. 09-10998-RGS, 2010 WL 2790463, at *9 (D. Mass. July 15, 2010) (quotations omitted).

10

Where an ALJ's functional assessment is at odds with a medical source opinion, he must adequately explain his reasons for disregarding that opinion.  See 20 C.F.R. § 404.1527(d); SSR 96-8p, 1996 WL 374184, at *7; Marshall v. Astrue, No. 08-cv-147-JD, 2008 WL 5396295, at *3 (D.N.H. Dec. 22, 2008); cf. Monroe v. Barnhart, 471 F. Supp. 2d 203, 211-13 (D. Mass. 2007) (ALJ must give sufficient explanation for adopting contrary view of disability).  Conflicts between treating physicians and a non-treating non-examining doctor are for the ALJ to resolve. Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982).  The decision to resolve that conflict against the claimant should be affirmed if "that conclusion has substantial support in the record . . . ."  Id.; see also DiVirgilio v. Apfel, 21 F. Supp. 2d 76, 77 (D. Mass. 1998).

McGrath contends that the ALJ erred in giving "little weight" to the opinion of a licenced social worker, Anne Meloin, that McGrath exhibited marked or extreme limitations that rendered him unable to work.[12]  Admin. R. 24, 747-48.  The ALJ refused to give Ms. Meloin's opinion greater weight because her "conclusions and limitations are not supported by the evidence of

---

[12]This opinion included a brief handwritten notation by Rosemary Spail, ARPN, indicating that Nurse Spail concurred with Ms. Meloin's conclusions.  Admin. R. 748.

record, including the observations and summaries of sessions
recorded by Anne Meloin." Id. at 24.

An ALJ is not required to give controlling weight to the
opinion of a licensed social worker, who is not considered an
"acceptable medical source," but rather is viewed as an "other
source". See 20 C.F.R. §§ 404.1513(a),(d)(1), 404.1527. While
an ALJ "may" consider those opinions in fashioning a claimant's
RFC, 20 C.F.R. § 404.1513(d)(1), "the adjudicator generally
should explain the weight given to opinions from these 'other
sources,' or otherwise ensure that the discussion of the evidence
in the . . . . decision allows a claimant or subsequent reviewer
to follow the adjudicator's reasoning." See SSR 06-3p, 2006 WL
2329939, at *6.

The ALJ engaged in a lengthy discussion of the record
evidence supporting her conclusion that McGrath was functionally
capable of certain light work, Admin. R. 20-23, including
McGrath's mental health records, id. at 22-23, and assessments of
McGrath's mental abilities by three doctors. Id. at 23-24
(discussing the opinions of Dr. Michael Evans, Dr. Richard G.
Selbst, and Russell Phillips, Ph.D.). The ALJ addressed Ms.
Meloin's opinion that McGrath had significant mental impairments
and concluded it is

> not supported by the evidence of record including the
> observations and summaries of sessions recorded by Anne
> Meloin. The claimant interacts appropriately with

> others and noted that he has a normal social life.  His
> depressive symptom were largely due to his emotionally-
> charged divorce and did not cause limitations of this
> nature.

Id. at 24.  Read in the context of the order, the ALJ makes clear

her reasons for giving little weight to Ms. Meloin's opinion and

the evidence supporting her functional conclusions.  Since it is

the province of the ALJ, and not the court to weigh the evidence,

Pires, 553 F. Supp. 2d at 21, and there was substantial support

for that decision, see Tremblay, 676 F.2d at 12, the court finds

no error.[13]

McGrath also contends that the ALJ erred in assigning a

light work RFC to McGrath because she "failed to incorporate the

limitations specified by Dr. Russell Phillips."  Cl. Br. 17.  In

January 2007, Dr. Phillips completed both a psychiatric review

---

[13]Further, Ms. Meloin's functional analysis was rendered on a
form provided by McGrath's representative and amounted to a two
page checklist with scant analysis.  When an opinion is given in
a cursory fashion, the ALJ can properly give it less weight.  See
Coggon v. Barnhart, 354 F. Supp. 2d 40, 53 (D. Mass. 2005); 20
C.F.R. §404.1527(d)(3); cf. Tremblay, 676 F.2d at 13 (treating
physician opinion entitled to no more weight than a consulting
physician if the disability assessment is conclusory).

Further, an ALJ may give less weight to an "advocacy
opinion."  See, e.g., Coggon, 354 F. Supp. 2d at 53.  Where the
record supports the inference that a medical opinion was
"obtained specifically for the purpose of bolstering [a
claimant's] case," an ALJ can properly give it less weight.
O'Dell v. Astrue, 736 F. Supp. 2d 378, 387 (D.N.H. 2010); cf.
Evangelista, 826 F.2d at 139.  Here, Ms. Meloin's opinion was
presented on a form provided by McGrath's representative in
January 2010, after McGrath's application was denied, and a few
months before the administrative hearing.

technique form and a mental residual functional capacity
assessment.  Admin. R. 428-45.  In his psychiatric review, Dr.
Phillips noted in Section III[14] of that form that McGrath
exhibited "moderate" limitations in his ability to maintain
concentration, persistence, and pace.  Id. at 438.  In his mental
residual functional capacity assessment, Dr. Phillips concluded
in Section I that McGrath exhibited a marked limitation in his
"ability to carry out detailed instructions," and was moderately
limited in several areas, including:  (1) the "ability to
understand and remember detailed instructions," (2) "maintain
attention and concentration for extended periods," (3) maintain a
schedule, and (4) "complete a normal workday and workweek  . . .
and to perform at a consistent pace."  Id. at 442-43.  In the
narrative section of his analysis, however, Dr. Phillips noted
that

> [t]he overall record indicates that, despite his mental
> impairments:  A) [McGrath] can understand and recall
> simple information; reliable management of more complex
> information would be precluded by his depressive
> symptoms; B) [McGrath] can sustain attention for two
> hours at a time and persist at simple tasks over eight-
> and forty-hour periods with normal supervision; C)
> [McGrath] can tolerate the minimum social demands of
> simple-task settings; D) [McGrath] can tolerate simple

---

[14]Section III of the psychiatric review form and Section I of
the mental functional capacity form ask the evaluator to offer
"summary conclusions" regarding the mental health and abilities
of a claimant.  These conclusions are presented by checking
boxes, and not in narrative form.  Id. at 438, 442-43.

> changes in routine, avoid hazards, travel
> independently, and make/carry out simple plans.

Id. at 444.  McGrath contends that "the ALJ was under the
mistaken impression that her mental RFC was fully consistent with
Dr. Phillips [sic] opinion.  . . . [and] her failure to provide
any reasoning for the rejection constitutes reversible error."
Cl. Br. 18.  Specifically, McGrath contends that "[m]issing from
the ALJ's RFC was any reference to the marked impairment and
multiple moderate limitations that Dr. Phillips found based on
his review . . . ."  Id. at 17.

The court disagrees.  The ALJ ruled that McGrath had the
capacity to engage in light work, but limited that work to
situations where he is only required to:

> understand and recall information of the type found in
> unskilled, routine, repetitive work, meaning that he
> can apply a common sense understanding to carry out
> straightforward but uninvolved instructions, and deal
> with problems involving a few concrete variables in or
> from standardized situations.  He can also tolerate the
> minimum social demands and simple workplace changes of
> routine repetitive work.

Admin. R. 20.  The ALJ's RFC is consistent with Dr. Phillips's
evaluation.  Although McGrath argues that the summary opinions
outlined in the checked boxes should be interpreted as more
restrictive than the RFC, the "written narrative contained in
section III of the form, rather than the checkboxes in section I
. . . . constitute[s][a claimant's] mental RFC assessment."
Talgo v. Astrue, No. 09-05-B-W, 2009 WL 3163335, at *5 (D. Me.

15

Sept. 29, 2009) (citing Social Security Administration Program

Operation Manual System § DI 24510.060(B)(2)(a) & (4)(a)).  The

court finds no reversible error.[15]

---

[15]The court's holding is only that it does not view McGrath's
RFC as inconsistent with Dr. Phillips's opinion.  It should not
be read to mandate consistency, as it is well-established that
neither case law nor common sense require an ALJ to rely on "some
super-evaluator, a single physician who gives the factfinder an
overview of the entire case."  Evangelista, 826 F.2d at 144; see
SSR 95-5p, 1996 WL 374183, at *4  (July 2, 1996).  An ALJ
formulates a claimant's RFC based on all the evidence in the
record, not solely the medical opinion of one medical source,
see SSR 95-5p, 1996 WL 374183, at *5 ("[t]he judgment regarding
the extent to which an individual is able to perform  . . . goes
beyond medical judgment regarding what an individual can still do
and is a finding that may be dispositive of the issue of
disability"), and thus an ALJ is free to disregard a medical
opinion that is inconsistent with the record.  20 C.F.R. §
404.1527; see SSR 95-5p, 1996 WL 374183, at *5.

Similarly, McGrath briefly implies that the ALJ should have
adopted word for word the terminology used by Dr. Michael Evans,
MD in formulating her RFC because she gave "great weight" to his
opinion.  Cl. Br. 9, Admin. R. 23, 389-93.  The court discerns no
significant inconsistency with Dr. Evans opinion.  Indeed, it is
arguably less restrictive than the ALJ's RFC, as Dr. Evans opined
that McGrath was:  (1) "capable of understanding and remembering
instructions," (2) able to "interact appropriately . . . and
communicate effectively," (3) "[p]sychiatrically . . . capable of
adapting to work," and (4) that although "[t]here is some slight
diminution in concentration and some difficulty with focus and
task completion, . . . it was not evident during the
examination."  Admin. R. 392.  Dr. Evans stated "it appears that
psychiatrically the patient is capable of functioning and
working."  Id. at 393.  "An ALJ is not required to adopt the
entirety of a doctor's RFC, especially a non-treating source."
Aho v. Comm'r Soc. Sec. Admin., No. 10-40052-FDS, 2011 WL
3511518, at *10 n.8 (D. Me. Aug. 11, 2010).  Further, it would be
inappropriate to reverse the order of an ALJ because she failed
to adopt, in its entirety, a medical source opinion at least
equally favorable to the finding of no disability.

To the extent that McGrath implies that the ALJ should have
specifically adopted Dr. Phillips's "two hour" limitation, the
court likewise finds no error.  The Social Security
Administration's Program Operation Manual explains "that the
mental abilities needed for any job include the ability to
understand, remember, and carry out simple instructions by, . . .
maintaining concentration and attention for extended periods (the
approximately 2-hour segments between arrival and first break,
lunch, second break, and departure)."  Baker v. Comm'r Soc. Sec.
Admin., No. 1:10-cv-00167-JAW, 2011 WL 1298694, at *4 (D. Me.
Mar. 31, 2011) (quotations and citations omitted), see Social
Security Administration Program Operation Manual System § DI
25020.010(B)(2)(a).  Courts accordingly have recognized that

> a DDS consultant's assessment of a capacity for
> concentration in two-hour blocks merely indicates that
> a claimant crosses the threshold for having a residual
> functional capacity for unskilled work, without
> imposing a cincture on the claimant's mental capacity
> that must be explained away by [the ALJ] if it is not
> incorporated into an RFC finding.

Baker, 2011 WL 1298694, at *6; cf. Aho, 2011 WL 3511518, at *10
n.8 ("the ALJ was entitled to accept or reject the two-hour time
frame limitation in calculating plaintiff's RFC").  The ALJ in
this instance was not required to include a specific two-hour
restriction in her RFC.

**B.   Veteran's Administration ruling**

McGrath claims it was error for the ALJ to give little weight to a decision by the VA that he was entitled to veteran's disability benefits.  See Admin. R. 24, 206-209.  McGrath admits that "determinations of disability made by other entities are not binding on the SSA," Cl. Br. 6, but asserts that the ALJ erred because the award letter issued by the VA in April 2008 "is clear and unequivocal in its conclusion that [McGrath] is disabled. Instead of accepting the opinion expressed therein, the ALJ gives the Department of Veteran's Affairs little weight."  Cl. Br. 5. The court finds no error.

An ALJ need not grant any special weight to other agency's disability determinations because they are based on considerations distinct from the Social Security regulations that govern an ALJ's disability determination.  20 C.F.R. § 404.1504; SSR 06-3p, 2006 WL 2329939, at *6.  Still, the ALJ cannot ignore another agency's disability decision.  See SSR 06-3p, 2006 WL 2329939, at *6.

Although the ALJ's discussion of the VA's decision was brief, it was sufficient to explain the basis for her decision and was supported by the record.  Little weight was given to the VA's disability decision because it

> was based upon the medical records submitted to the undersigned by the claimant . . . [and] because the standards required by the Veteran's Administration are

18

> not the same as the criteria required for a finding of
> disability.  The evidence of record does not support a
> finding of disability consistent with the above
> discussion.

Admin. R. 24.  In essence, the ALJ did not adopt the VA's

determination because it was based on different rules and the

record before it did not include both medical opinions the ALJ

found worthy of great weight and the claimant's reports of his

daily activities to the agency and medical professionals.  Id. at

21-24.  It is the exclusive province of the ALJ to weigh the

evidence in the file and make a disability determination.  See 20

C.F.R. §§ 404.1527, (f)(2); SSR 96-5p, 1996 WL 374180, at *2.

Here, the ALJ relied on psychiatric evaluations discussed supra

indicating that McGrath had the mental capability to work.  In

addition, the ALJ reviewed McGrath's function reports and medical

records noting, inter alia, his hobbies, gym membership, daily

activities, and medical records indicating that "he was doing

okay with chronic pain."  Admin. R. 22.  The ALJ's disagreement

with the VA, based both on evidence before the VA and developed

independently of the VA, does not justify reversal of her

decision.  Cf. DiVirgilio, 21 F. Supp. 2d at 77 (resolution of

conflicts are for the ALJ to resolve even if evidence could

justify a different result).

## C.   Work opportunities

McGrath next contends that the ALJ erred in concluding at Step 4 that he was able to perform his prior work, 20 C.F.R. §§ 404.1520(a)(4)(iv),(f), and at Step 5 that there were ample other work opportunities available to him in the national economy.  Id. at §§ 404.1520(a)(4)(v),(g).

At the fourth step of the evaluation process, an ALJ determines whether a claimant's impairment prevents him from engaging in work he has performed in the past.  20 C.F.R. § 404.1520(e).  If the claimant is unable to perform prior work, then the fifth step calls for an analysis of the claimant's ability to perform other work in light of his RFC, as well as age, education, and work experience.  If the claimant is unable to perform other work in the national economy, then he is entitled to disability benefits.  20 C.F.R. § 404.1520; Vega-Valentin v. Astrue, 725 F. Supp. 2d 264, 268 (D.P.R. 2010).  The claimant has the burden, at Step 4, of proving that he cannot return to his former employment because of the alleged disability.  Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  Once a claimant has demonstrated an inability to return to his previous employment, the Commissioner has the burden, at Step 5, to prove the existence of other jobs in the national economy the claimant can perform.  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

In making a disability determination, an ALJ may rely on occupational information in the Dictionary of Occupational Titles (DOT) and testimony of a vocational expert.  See 20 C.F.R. §§ 404.1560(b)(2), 404.1566(d),(e); U.S. Dep't of Labor, Emp't & Training Admin., Dictionary of Occupational Titles (4th ed., rev. 1991); SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). "Occupational evidence provided by a [vocational expert] . . . generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict . . . the adjudicator must elicit a reasonable explanation for the conflict" before adopting the vocational expert's opinion as a basis for her disability conclusion.  SSR 00-4p, 2000 WL 1898704 at *2.  If there is a conflict, the ALJ must "provide[] a basis for relying on the [vocational expert] . . . testimony rather than the DOT information."  Id.

McGrath contends that the ALJ erred because the jobs recognized at Step 4 "and the Step 5 jobs exceed the reasoning level [required by the DOT] identified by the ALJ's RFC."[16]  Cl.

---

[16]McGrath also briefly claims that the Step 4 jobs exceed the physical requirements of light work as McGrath's description of the jobs as he performed them involved lifting over 10 pounds regularly and 20 pounds occasionally.  Cl. Br. 12, 14; Admin. R. 189-196.  "The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally . . . sufficient . . . . for a finding of 'not disabled.'"  SSR 82-62, 1982 WL 31386, at *3 (1982) (emphasis added); see generally 20

Br. 14-16.  The ALJ set forth two jobs at Step 4,[17] and seven
jobs at Step 5 that McGrath could perform given his RFC.[18]  In
the DOT, each job is categorized by a specific physical and
mental skill level needed to accomplish that task.  Every job
description in the DOT includes a "general educational
development" or "GED" designation describing the mental abilities
needed by the employee to complete that job.  GED "embraces those
aspects of education (formal and informal) which are required of
the worker . . . ."  <u>Dictionary of Occupational Titles</u> at 1009.
The GED scale is comprised of six levels designating the
"reasoning development," "mathematical development," and
"language development" needed to perform jobs at that level.  <u>See
id.</u> at 1009-11.

---

C.F.R. §§ 404.1520(e),(f), 404.1560(b).  In this case, both Step
4 jobs identified by the ALJ are generally performed at a light
work level.  Therefore, the court finds no error.

    [17]The ALJ identified the jobs of "repacker" (DOT # 920.687-
146) and bottle packer (DOT #920.685-026).  Admin. R. 24; <u>see
Dictionary of Occupational Titles</u> at 933, 938.

    [18]The ALJ identified the jobs of light cleaning (DOT #
323.687-014), fast food worker (DOT # 311.472-010), telemarketer
(DOT # 299.357-014), document preparer (DOT # 249.587-018),
printed circuit board assembler (DOT # 726.684.110), eyeglass
frame polisher (DOT # 713.684-038) and bit packer (DOT #739.685-
046).  Admin. R. 25-26; <u>see Dictionary of Occupational Titles</u> at
219, 241, 248, 709, 734, 771.

"GED-R" describes the specific reasoning ability needed for a particular position.  For example, "GED:R1" requires a worker to "[a]pply commonsense understanding to carry out *simple* one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job."  Dictionary of Occupational Titles at 1011 (emphasis added).  A "GED:R2" requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations."  Id.  (Emphasis added.)  In this case, all the jobs designated by the ALJ were either "light" or "sedentary" jobs, and all but one, namely "cleaner," carried a "reasoning level" or "GED:R" of at least 2.  See Dictionary of Occupational Titles at 219, 241, 248, 709, 734, 771, 933, 938.  McGrath asserts that the ALJ erred because the jobs identified exceed an ability to perform "unskilled, routine, repetitive work."

At the heart of McGrath's claim is the inherent conflict between skill levels as defined in the social security regulations, see 20 C.F.R. § 404.1569a(c)(1)(iii) (a non-exertional limitation exists where a claimant has "difficulty understanding or remembering detailed instructions"), and in the DOT.  See Dictionary of Occupational Titles at 1009-11; see generally, Baker v. Astrue, No. 10-cv-454-SM, 2011 WL 6937505, at

23

*16 (D.N.H. Nov. 15, 2011); Pepin v. Astrue, No. 09-464-P-S, 2010 WL 3361841, at *3 (D. Me. Aug. 24, 2010) (discussing differences).  The issue at hand arises because there is "an incongruity that exists between the Social Security regulations and the DOT . . . ."  Auger v. Astrue, 792 F. Supp. 2d 92, 95 (D. Me. 2011).  Specifically,

> the Social Security regulations and the DOT use
> markedly different standards for addressing a
> claimant's ability to understand, remember, and
> concentrate on job duties.  The regulations divide such
> abilities into only two categories – "short and simple
> instructions" and "detailed" or "complex" ones –
> whereas the DOT uses a more graduated scale ranging
> from one to six that does not easily accommodate itself
> to the regulations' simple/complex dichotomy.  Thus, no
> one-to-one parallel can be found between "simple" as it
> is used under the regulations and the DOT's
> requirements.

Id. at 95-96 (brackets and ellipses omitted); see Alker v. Astrue, No. 10-CV-291-SM, 2011 WL 1770473, at *7 (D.N.H. May 10, 2011).  The question becomes whether "a task may be 'simple' under the regulations and still involve the kind of 'detailed' tasks required under Level 2 reasoning."  Thompkins v. Astrue, No. 09 C 1339, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010).

Courts struggle with the issue of whether Level 2 jobs include unskilled, or "simple" tasks or, if the term "detailed" in the definition of Level 2 reasoning denotes something more.  Three circuits have found Level 2 jobs consistent with simple tasks, see Aho, 2011 WL 3511518, at *9 (listing cases from other

24

circuits), an issue yet to be decided by this circuit.  Id.
(recognizing that "the First Circuit has yet to address this
issue").  Indeed, District Courts in this Circuit have reached
different conclusions.  Compare Mead v. Barnhart, No. Civ. 04-
139-JD, 2004 WL 2580744, at *2-*3 (D.N.H.), with Pepin, 2010 WL
3361841, at *4-*5 (D. Me.); Aho, 2011 WL 3511518, at *10 (D.
Mass.); cf. Baker, 2011 WL 6937505, at *16 (D.N.H.).  This court,
in Mead, 2004 WL 2580744, at *2, stated that "a 'GED' reasoning
level of 2, or higher, assumes that the applicant is capable of
more than simple or repetitive tasks."  Although our sister
district in Maine has specifically rejected court decisions
relied on in Mead, see Pepin, 2010 WL 3361841, at *4-*5, a recent
case in this district indicated that "[i]f the ALJ's decision had
rested entirely on the availability of jobs requiring level-two
reasoning development, [the claimant] might well be entitled to a
remand, presuming that 'detailed but uninvolved' instructions,
whatever they may be, are more complex than simple instructions."
Baker, 2011 WL 6937505, at *16.

Courts interpreting whether a finding that a claimant can
accomplish "simple" tasks encompass GED-R2 jobs have wrestled
with the idea of what the term "detailed" means.  Here, the ALJ
further complicated the analysis, because although she described
McGrath's mental RFC almost entirely using the definition for

Level 2 reasoning,[15] she replaced the term "detailed" in the
definition, see Dictionary of Occupational Titles at 1011, with
"straightforward," Admin. R. 20, which can reasonably be
understood as a synonym for "simple."[16]  The court cannot discern
whether the ALJ meant to indicate something equivalent to or less
than GED:R-2.  The Commissioner contends that because McGrath's
RFC is almost identical to the definition of a GED:R-2 listing,
the ALJ intended the RFC to encompass GED:R-2 jobs.

The court cannot, with great certainty, interpret the ALJ's
order either way.  Remand normally would be appropriate where
inconsistences in an ALJ's order leads a court unable to reliably
review the claims of error.  Here, however, one job identified by
the ALJ, that of "cleaning (DOT #323-687-014 . . . ),"[17] Admin.

---

[15]As set forth supra, the ALJ addressed McGrath's mental
abilities in her RFC, concluding that McGrath:

> can understand and recall information of the type found
> in unskilled, routine, repetitive work, meaning that he
> can apply a common sense understanding to carry out
> straightforward but uninvolved instructions, and deal
> with problems involving a few concrete variables in or
> from standardized situations.  He can also tolerate the
> minimum social demands and simple workplace changes of
> routine repetitive work.

Admin. R. 20 (emphasis added).

[16]"Straightforward" is defined as "[f]ree from evasiveness or
obscurity; exact, candid . . . clear-cut, precise."  Merriam -
Webster's Collegiate Dictionary 1232 (11 ed. 2007).

[17]The court notes that most cleaning jobs require either
medium or heavy exertion, however, the specific job identified by

R. 25, involves a GED:R-1 reasoning level.  Dictionary of
Occupational Titles at 248.  "A single occupation is sufficient
to meet the commissioner's burden" at Step 5 of the evaluation
process.  Welch v. Barnhart, No. 02-247-P-C, 2003 WL 22466165, at
*4 (D. Me. Oct. 31, 2003); see Baker, 2011 WL 6937505, at *16.
Accordingly, the court concludes there was no reversible error.[18]

---

the ALJ (and the vocational expert at the hearing) requires only
light exertion.  Dictionary of Occupational Titles at 248; see
Admin. R. 25, 72.

     [18]McGrath admits that the mental RFC outlined by the ALJ
encompasses the cleaning job, but attempts to argue that this job
is inconsistent with a light work RFC because it "is physically
unsuitable since it requires frequent reaching and handling which
is physically unsuitable since it requires frequent reaching and
handling which the VA doctor's (Ex. 11F) note is contradicted
with his fractured arms and subsequent this will be explained
more infra. trauma."  Cl. Br. 16.  Even assuming that the court
is required to address McGrath's argument, see, e.g., Wall, 561
F.3d at 1065 (court's need not address undeveloped,
incomprehensible, or perfunctory claims), the court finds no
error.  At Step 5, an ALJ can rely on the testimony of a
vocational expert to determine if there are jobs available to the
claimant.  See Sousa v. Astrue, 783 F. Supp. 2d 226, 235 (D.
Mass. 2011) ("The opinion of a vocational expert that a Social
Security claimant can perform certain jobs qualifies as
substantial evidence at the fifth step of the analysis").  Here,
the vocational expert stated that given the RFC developed by the
ALJ, McGrath could perform "light cleaning jobs.  DOT is 323.687-
014."  Admin. R. 72.  Further, the ALJ, in her discussion of
McGrath's capabilities, noted other evidence supporting an
ability to perform light cleaning jobs, including a physical RFC
assessment (that did not include any restrictions on reaching and
handling), id. at 23, 376, and testimony regarding McGrath's
lifting of 20-25 pound bicycles on a regular basis as part of his
bicycle restoration hobby and his stated ability to complete
household chores.  Id. at 21-22; cf. Arocho v. Sec'y of Health &
Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) ("in order for a
vocational expert's answer to a hypothetical question to be
relevant, the inputs into that hypothetical must correspond to

IV.   **CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), McGrath's motion to reverse and remand the Commissioner's decision[13] is denied.  The Commissioner's motion to affirm the decision[14] is granted.  The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 22, 2012

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.

_____

conclusions that are supported by the outputs from the medical authorities").

[13]Document no. 15.

[14]Document no. 17.